UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL MOSES and KATHY MOSES<br><br>　　　　　　　　　　Complainant<br><br>　– Versus –<br><br>WELLS FARGO BANK, N.A.<br><br>　　　　　　　　　　Defendant | Civil Action No. 2:25-cv-00546<br><br>HONORABLE JAY C. ZAINEY<br><br>MAGISTRATE JUDGE MICHAEL<br>　NORTH |

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

MAY IT PLEASE THE COURT:

Plaintiffs, Michael Moses, M.D. ("Dr. Moses") and Kathy Moses, through undersigned counsel, respectfully submit this memorandum to set forth the reasons this Court should deny the Motion to Dismiss (Doc. 7) filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"):

**INTRODUCTION**

In 2020, Dr. and Mrs. Moses set out to purchase a home on Pensacola Beach. Their Wells Fargo private wealth banker, intimately familiar with their financial wherewithal and plans, referred them to Joe Beeson in Wells Fargo's mortgage division. In what proved to be a prescient business decision, the Moseses paid $15,750.00 to "lock in" a 3.750% rate with Wells Fargo for their loan. Wells Fargo even issued a Commitment Letter (Doc. 7-3), reflecting its commitment to underwrite the loan.

From the time the first Interest Rate Lock Agreement (Doc. 7-2) was issued to the time Wells Fargo finally refused to underwrite the loan, interest rates increased precipitously. During

this time and despite its promises, Wells Fargo went to great lengths to avoid underwriting the loan, as the Moseses' locked rate looked less and less appetizing -- dropping further and further below the rate the powerful bank could otherwise command on the open market. To avoid its obligations, Wells Fargo went to great lengths: first, it employed flawed appraisals. Then they pretended that the bank's own long-time private wealth clients lacked the necessary income. In one of its more clever attempts to back out of the loan, Wells Fargo used its own credit checks to lower Dr. Moses's credit score and then attempted to rely upon the diminished score as a basis for denial. Finally, Wells Fargo claimed that it could not underwrite a loan for property on leased land – though it regularly does so and had known the land was leased for years. Ultimately, Wells Fargo refused to underwrite the "locked in" loan, after the prime interest rate had nearly doubled. Wells Fargo claimed that the Moseses lacked sufficient income, exhibited an unacceptably high debt-to-income ratio, and could not obtain a loan on leased land. These pretextual reasons were either inaccurate, manipulated by Wells Fargo, or known by Wells Fargo long before.

In response, the Moseses have brought this suit, claiming (1) breach of the Interest Rate Lock Agreement; (2) breach of the commitment letter; (3) fraud and fraudulent inducement; (4) violation of LUTPA; (5) negligent misrepresentation; and (6) an alternative count for detrimental reliance. Wells Fargo responded with a motion to dismiss all claims, which this Court should deny.

## **LAW & ARGUMENT**

I.  **The Rate Lock Agreement and the Commitment Letter obligated Wells Fargo to underwrite the loan in good faith.**

   **A. The Commitment Letter was not an agreement to agree.**

The Commitment Letter was not an agreement to agree, but rather a contract subject to suspensive conditions. Under Louisiana law, a "conditional obligation is one dependent on an

uncertain event."[1] "If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive."[2] Here, the Commitment Letter (Doc. 7-3) sets out several suspensive conditions. For example, the bank can "withdraw this approval or modify the terms…if…[a]ny information is presented that has not been revealed to us previously" – a suspensive condition. The Commitment Letter also sets out a plethora of documentation needs. Delivery of those documents would be a suspensive condition of the contract. The obligation could not be enforced unless these conditions were met. Here, the Moseses have argued that they have either met every suspensive condition or that they could not fulfill them because of the intentional obstruction of Wells Fargo. Under Louisiana law, a "condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment."[3] The Moseses have alleged the breach of two contracts subject to suspensive conditions. Neither was an agreement to agree.

### B. Wells Fargo was also obligated by the Rate Lock Agreement to underwrite the loan.

Careful not to acknowledge the presence of suspensive conditions, Wells Fargo argues that Plaintiffs cannot ultimately prevail on the breach of contract claim based on the Rate Lock Agreement because Plaintiffs failed to meet certain "preconditions."[4] However, the Moseses have argued for every condition that it either (1) was met; (2) was not met because of the wrongful conduct of Wells Fargo; or (3) did not change from the time the Moseses purchased the rate to the time of the denial. Wells Fargo's argument is a premature summary judgment argument, neglecting

---

[1] La.C.C. art. 1767.
[2] La.C.C. art. 1767.
[3] La.C.C. art. 1772.
[4] Doc. 7-1, *Defendant Wells Fargo Bank, N.A.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint*, p. 8.

to acknowledge that Wells Fargo's own, documented interference with the Moseses' ability to satisfy the conditions is a fundamental element of their claim.

Wells Fargo would have the Court weigh the facts of the case by cherry-picking allegations from the Complaint. For example, Wells Fargo argues that it was excused from performance because the Moseses "could not meet the expiration date of the rate lock agreement."[5] That argument neglects the specific allegation in the Complaint that Wells Fargo sold to the Plaintiffs and expressly agreed to "several extensions of their original Interest Rate Lock Agreement."[6] Then Defendant argues that the property did not appraise at a sufficient value.[7] This ignores the well-pleaded fact that even the Wells Fargo mortgage officer described the mortgage as plagued with "significant material deficiencies" and the fact that the property eventually appraised at a sufficient value.[8] Setting aside the facts alleged that show these conditions were actually met, Wells Fargo's pretextual denial of this loan is highlighted best by the fact that ***neither of these alleged grounds for denial were referenced in the denial letter***.[9]

Next, Wells Fargo resorts to the reasons that Wells Fargo actually claimed as the reasons for denying the loan. Wells Fargo alleges that they were not obligated to underwrite the loan because "Plaintiff's employment income decreased" and because the property is "subject to highly-technical leaseholds."[10] The income argument ignores the allegations of the Complaint that "Wells Fargo was aware of income information beyond the Moses' surgical practice and failed to

---

[5] Doc. 7-1, *Defendant Wells Fargo Bank, N.A.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint*, p. 8.
[6] Complaint (Doc. 1), p. 5, ¶ 19.
[7] Doc. 7-1, *Defendant Wells Fargo Bank, N.A.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint*, p. 9.
[8] Complaint (Doc. 1), p. 8, ¶ 32; 33-34.
[9] Complaint (Doc. 1), p. 8, ¶ 61.
[10] Doc. 7-1, *Defendant Wells Fargo Bank, N.A.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint*, p. 9.

take into account the Moseses' other sources of income reflected on his tax returns." The Moseses have alleged that Wells Fargo improperly arrived at its income conclusion; that is an issue of fact. Similarly, the leasehold argument is addressed by the Moseses' allegation that Wells Fargo was on notice of the leasehold nature of the property from the inception of the relationship and that "Wells Fargo routinely financed mortgage loans for property on Pensacola Beach – all on leased land."[11] A motion to dismiss is not a mini trial on the merits; the Moseses have alleged more than enough facts to put these conditions at issue. Wells Fargo's case law is unconvincing.

Wells Fargo argues that "the Fifth Circuit recognizes a consumer's failure to satisfy conditions precedent means financial institutions are not required to enter into mortgage loans."[12] In support of that proposition, Wells Fargo cites to *Thrash v. Countrywide Commercial Real Estate Finance Inc.*, a case decided pursuant to Mississippi law and specifically pursuant to Mississippi's statute of frauds.[13] *Thrash* is also factually distinguishable, because the rate lock instrument contained a provision that required any modifications to that agreement to be in writing.[14] The case is not binding on this Court and can be disregarded as factually distinguishable.

### C. Plaintiffs state a claim for breach of the covenant of good faith and fair dealing.

Plaintiffs claim that Well Fargo breached the Interest Rate Lock Agreement and the Commitment Letter. They also allege that Wells Fargo breached the implied covenant of good faith with respect to both contracts. In response, Wells Fargo argues that the Moseses cannot state such claims because "the agreements expressly stated that Wells Fargo was not obligated to extend

---

[11] Complaint (Doc. 1), p. 12-13, ¶ 57-59.
[12] Doc. 7-1, *Defendant Wells Fargo Bank, N.A.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint*, p. 10 (citing Thrash v. Countrywide Comm. Real Estate Fin. Inc., 405 F.App'x 816, 819 (5th Cir. 2010).
[13] *Thrash v. Countrywide Comm. Real Estate Fin. Inc.*, 405 F.App'x 816, 818-819 (5th Cir. 2010).
[14] *Id* at 819.

a loan to Plaintiffs."[15] That argument ignores the allegations of the Complaint. Wells Fargo was not obligated to extend a loan *under certain conditions*. Plaintiffs have alleged that Wells Fargo failed to act in good faith when weighing those conditions. Wells Fargo either relied upon pretextual grounds, manipulated the metrics, or relied upon metrics that it knew could not be met at the outset of the underwriting process. In any case, it failed to act in good faith.

### D. Plaintiffs have stated a claim for detrimental reliance.

In response to Plaintiffs' well-plead alternative claim for detrimental reliance, Defendant invents a new element of the claim. The elements of a claim for detrimental reliance are "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance."[16] "Evaluation of a detrimental reliance claim examines not whether the parties intended to perform, but whether a representation was made in a way that the promisor should have expected the promisee to rely upon it, and whether the promisee so relied to his detriment."[17] "Significantly, to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract."[18]

A change in position by the *defendant* is not an element of a detrimental reliance claim. Rather than argue the elements of the claim, Wells Fargo flatly argues that "Plaintiffs have not and cannot plead that Wells Fargo changed its position in its dealings with them."[19] Change in position by the defendant is not an element of the claim.

---

[15] Doc. 7-1, *Defendant Wells Fargo Bank, N.A.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint*, p. 11.
[16] *Luther v. IOM Co., LLC*, 2013-0353 (La. 10/15/13), 130 So. 3d 817, 825 (*citing Suire fv. Lafayette City-Parish Consolidated Government,* 2004-1459 (La. 4/12/05), 907 So. 2d 37, 590.
[17] *Allbritton v. Lincoln Health Sys.,* 45537 (La. App. 2 Cir 10/20/10), 51 So. 3d 91, 95 (*citing Suire, supra.).*
[18] *Suire v. Lafayette City-Parish Consol. Gov't,* 04-1459 (La. 04/12/05), 907 So. 2d 37, 59 (*citing Babkow v. Morris Bart, P.L.C.*, 1998-0256 (La. App. 4 Cir. 12/16/98), 726 So. 2d 423, 429).
[19] Doc. 7-1, *Defendant Wells Fargo Bank, N.A.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint*, p. 12.

Again, the elements of the claim are "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance."[20] The Moseses have alleged that Wells Fargo represented it would close the loan at a certain rate, that the Moseses paid money and did not apply for alternative funding, based upon that representation, and that the Moseses were damaged as a result.[21] The Moseses have stated a claim for detrimental reliance and should not be required to fulfill invented elements.

## II. The Moseses have stated claims for fraud/fraudulent inducement, violation of LUTPA and negligent misrepresentation.

### A. The statements Wells Fargo made are actionable as fraud because they were untrue at the time they were made.

Wells Fargo argues that the Moseses' fraud claims should be dismissed because "fraud cannot be predicated on unfulfilled promises or statements as to future events."[22] While true on its own, that statement is an oversimplification of the law on fraud as to future things. Louisiana law is consistent that "a promise may give rise to fraud upon a showing that the defendant had no intention to perform as promised at the time the promise was made."[23] Fraud "may be based on promises made when there was no intention to perform as promised."[24] The case law draws a distinction between "a promise honestly made, but subsequently unfulfilled," which does not constitute fraud and a "promisor who has no intention of performing a promise at the time a

---

[20] *Luther v. IOM Co., LLC*, 2013-0353 (La. 10/15/13), 130 So. 3d 817, 825 (*citing Suire fv. Lafayette City-Parish Consolidated Government,* 2004-1459 (La. 4/12/05), 907 So. 2d 37, 590.
[21] If the Court determines that Plaintiffs have insufficiently plead that they forewent alternative funding options, Plaintiffs pray for leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2) to clarify.
[22] Doc. 7-1, *Defendant Wells Fargo Bank, N.A.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint*, p. 14 (quoting *Bass v. Coupel,* 671 So.2d 344, 351 (La. Ct. App. – 1st Cir. 1995).
[23] *Billy Navarre Certified Used Car Imps. L L C v. Claremont Prop. Co.,* No. 2:24-CV-00085, 2025 U.S. Dist. LEXIS 92340, at *10 (W.D. La. May 14, 2025) (citing *Taylor v. Dowling Gosslee & Assocs., Inc.*, 22 So.3d 246, 255 (La. Ct. App. 2d Cir. 2009 and *Sun Drilling Prods. Corp. v. Rayborn*, 798 So.2d 1141 (La. Ct. App. 4th Cir. 2001)).
[24] *Taylor v. Dowling Gosslee & Assocs.,* 44654 (La. App. 2 Cir 10/07/09), 22 So. 3d 246, 255 (*citing Sun Drilling Products Corp. v. Rayborn*, 2000-1884 (La. App. 4th Cir. 10/03/01), 798 So. 2d 1141, *writ denied*, 2001-2939 (La. 1/25/02), 807 So. 2d 840).

promise is made," which does constitute fraud.[25] The Moseses specifically plead that when Wells Fargo made its misrepresentations, it had "no intention of honoring them if market rates changed."[26] Wells Fargo represented for years that they would honor the rate lock "while, at the same time, not intending to do so."[27]

In support of its position that "fraud cannot be predicated on unfulfilled promises or statements as to future events,"[28] Wells Fargo relies upon *Bass v. Coupel*, in which there was an appeal of a full trial on the merits. In reviewing the decision of the trial court, the Louisiana First Circuit held that the specific promises at issue (with the benefit of an evidentiary trial) were made with respect to future actions and that the defendant merely failed to perform.[29] That is a far cry from the allegations herein, as the Moseses have alleged that Wells Fargo had no intention of performing <u>at the time the promise was made</u>. Plaintiffs have stated a claim for fraud.

### B. The Moseses' claim for violation of LUTPA is timely.

Defendant argues that the Moseses' LUTPA claim is untimely, as "(t)he UTPA includes a one-year statute of limitations."[30] While Defendant accurately restates the prescriptive period provided by Louisiana law, it fails to acknowledge the extent of the Wells Fargo's actions and the actual act(s) that give rise to the LUTPA claim.

Defendant claims that the basis of the Moseses' LUTPA claim occurred on July 7, 2022 and September 8, 2022, when Wells Fargo first issued the Interest Rate Lock Agreement and

---

[25] *Lagraize v. Basler*, 20-39 (La. App. 5 Cir 09/09/20), 304 So. 3d 102, 112 (*citing Automatic Coin Enterprises, Inc. v. Vend-Tronics, Inc.*, 433 So.2d 766, 767-68 (La. App. 5 Cir. 1983)).
[26] Complaint (Doc. 1), p. 17, ¶ 87.
[27] Complaint (Doc. 1), p. 17, ¶ 89.
[28] Doc. 7-1, *Defendant Wells Fargo Bank, N.A.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint*, p. 14 (*quoting Bass v. Coupel,* 671 So.2d 344, 351 (La. Ct. App. – 1st Cir. 1995).
[29] *Bass v. Coupel,* 671 So.2d 344, 352 (La. Ct. App. – 1st Cir. 1995).
[30] Doc. 7-1, *Defendant Wells Fargo Bank, N.A.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint*, p. 15.

Commitment Letter, respectively. Yet at this time, no LUTPA violation had occurred, as Wells Fargo appeared poised to act in accordance with the agreements – for the time being. While these occurrences in 2022 were some of the first transactions between the Moseses and Wells Fargo related to the mortgage at issue, these instances were not *the* "transaction or act which gave rise to this right of action."[31] The actual occurrence that gave rise to the Moseses' LUTPA claim did not occur until December 2024, when Defendant informed the Moseses that it would not be upholding its obligations in accordance with the Interest Rate Lock Agreement and the Commitment Letter. By Defendant's logic, a bad actor would be able to evade a LUTPA claim as long as his fraudulent conduct occurred one year after the underlying transaction commenced. Here, the Moseses timely filed their LUTPA claim, as the basis of their claim was the fraudulent conduct that occurred in December 2024 when Wells Fargo arbitrarily refused to uphold the agreements from 2022. Therefore, the Moseses' LUTPA claim is not untimely.

### C. The Moseses have stated a claim for negligent misrepresentation.

Wells Fargo argues that the Moseses cannot state a claim for negligent misrepresentation because they have not pled a fiduciary relationship. Wells Fargo bases this argument upon La. R.S. 6:1124, passed in 1991, which dictates that banks are not implied fiduciaries of every customer. However, the Moseses have plead that they were "long-time clients of Defendant Wells Fargo's private wealth management division."[32] The Complaint continues to outline months of intimate dealings with the bank's mortgage division. Surely the bank owed the Moseses *some* duty to furnish accurate information, as the Moseses were encouraged to obtain a mortgage from Wells Fargo by one of its private wealth advisors.

---

[31] La. Rev. Stat. 51:1409(E)
[32] Complaint (Doc. 1), p. 3, ¶ 6.

Fortunately, District Judge Susie Morgan had opportunity to dive deep into the law of negligent misrepresentation in the matter of the Saints "no-call" suit. In that 2019 opinion, issued after the passage of the revised statute relied upon by Wells Fargo, her Court outlined the current state of negligent misrepresentation:

> Negligent misrepresentation originated as a common law tort, and historically Louisiana jurisprudence limited the application of negligent misrepresentation to cases in which a contractual or fiduciary relationship exists between the parties…More recently, Louisiana courts have integrated negligent misrepresentation into Louisiana's civilian duty-risk analysis for torts.
>
> The duty-risk analysis is 'employed on a case by case basis.' Under the duty-risk analysis, a plaintiff in a negligent misrepresentation case must allege the following four elements: (1) the defendant, in the course of its business or other matters in which it had a pecuniary interest, supplied false information; (2) the defendant had a legal duty to supply correct information to the plaintiff; (3) the defendant breached its duty, which can be breached by omission as well as by affirmative misrepresentation; and (4) the plaintiff suffered damages or pecuniary loss as a result of its justifiable reliance upon the omission or affirmative misrepresentation.[33]

The question, then, is whether Plaintiffs have plead a relationship that would give rise to a duty to furnish correct information. The Court pointed out several instances in which a duty to provide accurate information existed:

> For example, in Louisiana a termite inspector owes a duty of reasonable care to supply accurate information to both the seller of the home and a prospective purchaser because termite inspections are designed to protect both the buyer and the seller. Similarly, a real estate agent or broker owes a duty of reasonable care to supply accurate information to the seller and purchaser. ***Further, a bank owes a duty of reasonable care to supply accurate information to its customer when advising its customer on how to open a joint account that will allow for the disbursal of account funds after death.*** Likewise, a company owes its customer a duty of reasonable care to supply accurate information regarding a change in the customer's insurance policy.[34]

---

[33] *Ryan v. NFL, Inc.,* No. 19-1811, 2019 U.S. Dist. LEXIS 126343, at *16-17 (E.D. La. July 30, 2019) (internal citations and quotations omitted).

[34] *Id.,* at *18-19. (internal citations and quotations omitted) (emphasis added).

Finally, Judge Morgan goes through a list of things that the no-call plaintiffs failed to allege. These may sound familiar because they are all things that Plaintiffs herein *did* allege:

> Plaintiffs do not allege the Defendants provided the alleged misinformation in the context of a contractual or fiduciary relationship with them. Plaintiffs do not allege the Defendants provided the alleged misinformation to a *limited* group of persons for whose benefit the Defendants supplied the information, nor do Plaintiffs allege the Defendants supplied the alleged misinformation in the context of a transaction in which the Defendants intended or expected the Plaintiffs to rely on the misinformation.[35]

The Moseses *did* allege that Wells Fargo provided the alleged misinformation in the context of a contractual or fiduciary relationship with them; they have alleged the existence of at least two contracts and a private banking relationship. The Moseses *did* allege that Wells Fargo provided the alleged misinformation to a limited group of persons for whose benefit the Defendants supplied the information; they allege that the information was provided specifically to them. The Moseses *did* allege that Wells Fargo provided the alleged misinformation in the context of a transaction in which the Defendants intended or expected the Plaintiffs to rely on the misinformation; they provided the information in the context of the loan underwriting process.

The Moseses have alleged more than enough facts to support a claim for negligent misrepresentation. Wells Fargo had both contractual and fiduciary duties to provide its long-time clients with accurate information, and it failed to do so, resulting in harm to the Moseses.

## **CONCLUSION**

To adopt the arguments of Wells Fargo is to suspend logic: the Rate Lock Agreement is not an agreement to lock a rate. The Commitment Letter does commit anyone to anything. The bank didn't commit fraud because it actually failed to perform…but it was also never obligated to

---

[35] *Ryan v. NFL, Inc.,* No. 19-1811, 2019 U.S. Dist. LEXIS 126343, at *20 (E.D. La. July 30, 2019)

perform. These arguments defy logic. The Moseses pray that this Court deny Defendants' Motion to Dismiss (Doc. 7) so that they can pursue their rightful claims.

Respectfully Submitted,

**STERNBERG, NACCARI & WHITE, LLC**

*/s/ Graham H. Williams*
**SCOTT L. STERNBERG**, La. Bar No. 33390
**GRAHAM H. WILLIAMS,** La. Bar No. 36731 **T.A.**
**JOHNSTON J. BURKHARDT,** La. Bar No. 38687
935 Gravier Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: 504.324.2141
Facsimile:  504.534.8961
scott@snw.law | graham@snw.law | johnston@snw.law
***Counsel for Plaintiffs***